Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Catherine E. Zinoff presiding, along with Justice Mary S. Shostak and Justice Donald C. Hudson. The case is number 219-0702, People of the State of Illinois, Plaintiff Appellant v. Willie M. Randle, Defendant Appellee. Arguing for the Appellant, Stephen A. Rogers. Arguing for the Appellee, Catherine D. O'Daniel. Justice Zinoff, yes, Mr. Rogers, yes, Your Honor. You may begin. Good morning, Your Honors, Counsel, may it please the Court. My name is Stephen Rogers and I represent the people of the State of Illinois. Your Honors, the State is here this morning to ask this Court to reverse the trial court's granting of defendant's motion to suppress evidence for two reasons. First, the trial court erred in holding that the warrant in this case did not provide the issuing magistrate with the substantial basis to conclude that probable cause existed to believe that there was a fair probability that contraband or evidence of a crime would be found in defendant's location information. Second, even assuming this Court agrees that the issuing judge lacked a substantial basis to find probable cause within the search warrant affidavit, the extreme sanction of suppression is not warranted in this case because there is no misconduct that suppression could meaningfully deter. On the first point, I will just briefly touch on the evidence that supported the issuing judge's decision and why that evidence, viewed under the proper standard, supported the issuing judge's decision finding that probable cause existed. The evidence in Inspector Henry's investigation could generally be placed in three categories. One is defendant's background. Defendant was a parolee, a convicted drug dealer, and a member of the Satan Disciples. Defendant had a long-time relationship with another Satan Disciple, Douglas Medina, who was implicated in Henry's investigation. Courts have recognized that parolees are more likely to commit crimes and that prior convictions, especially when similar to the offense under investigation, are relevant in a probable cause analysis. Also, courts have recognized that parolees have severely diminished expectations of privacy to the point where the Ninth Circuit recently held that the warrantless placement of a GPS monitor on a parolee's vehicle was reasonable under the Fourth Amendment. The second category of evidence consists of defendant's actions throughout the investigation. Over the course of the investigation, defendant went from a Range Rover to a Maserati and then to a 2015 Dodge Ram pickup. The most recent acquisition occurred while defendant was laid off from his construction job for the winter. Defendant had paid cash for a new house and spent tens of thousands of dollars remodeling the inside of the house while leaving the outside of the house dilapidated. The third category of evidence consists of information provided by informants that tied defendant to drug distribution. Informant Smith, in the periods between April and May 2016, informed officers that defendant had sold her cocaine 30 to 40 times over the prior year to year and a half. On one occasion, which Smith explained to officers in detail, Smith drove defendant to a Walgreens in Cicero, Illinois, near Chicago, where defendant exited the vehicle, procured cocaine, and then Smith drove defendant back to his residence. Smith also attempted to purchase drugs from defendant over Facebook, but the planned purchase was thwarted when it appeared defendant wanted to trade drugs for sex. Informant Davis proved to have detailed knowledge of the Satan Disciples. He conducted a control buy with a member of the Satan Disciples, Louis Vaughn, and provided officers with information about the gang and their operations. Vaughn drove directly to Douglas Medina's house after Davis made his drug debt payment, which was surveilled by officers. And in a subsequent conversation between Davis and Medina, Medina told Davis that he had to collect payments by Fridays so that he could purchase the drugs from defendant. In regard to the principles that are to be applied when reviewing the issuing judge's decision, the state would like to point out that the probable cause determination is governed by common sense that are factual and practical rather than technical rules. The United States Supreme Court has warned against invalidating warrants, interpreting the affidavit in a hyper-technical manner. And finally, the resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded warrants. The bottom line here, Your Honors, is that we want, as a society, for officers to investigate crimes and present their findings to an independent magistrate and then execute within the confines of a court-approved warrant. The officers in this case did what we expect, what we encourage, and what the Fourth Amendment demands. Viewing the evidence presented to the issuing judge in a common-sense manner, as opposed to hyper-technically, supports the issuing judge's probable cause determination. And in regard to good faith, briefly, this Court should consider the good faith exception to the exclusionary rule because the facts of this case simply do not warrant the extreme sanction of exclusion where there is not any misconduct to deter. With that, Your Honors, the state asks this Court to reverse the trial court's decision granting defendants motion to suppress. And I am now available to answer any of your questions. Thank you. This is Justice Zinoff. I'll be asking a few questions first this morning. I heard you mention when we're reviewing the issuing judge's decision. So is that what we're doing, or are we reviewing the trial court's decision to grant the motion to suppress? Well, Your Honors, because this is a purely legal decision that the trial court made, there would be no deference due the trial court. And on this court, I cited people versus Brown out of this court, and you're essentially reviewing the issuing judge's decision to determine whether there was a substantial basis to find probable cause within the affidavit. Okay. Thank you. And, counsel, isn't the information in this affidavit stale? I mean, Davis' information was over four months old. And if it wasn't stale, I mean, you know, how can, well, if it wasn't stale, why not? Well, Your Honors, mainly because this investigation shows that this was an ongoing drug distribution chain. This was not, you know, if you just took the two informants and you had none of the background information, then it would arguably, at least arguably, be stale. But when you have defendant's connections to the Satan Disciples and his what appeared to be a year to year and a half of dealing drugs to informant Smith, you essentially establish that over the period of the investigation, nearly a year, you have defendant continually involved in the drug trade. And so the courts have recognized that the stalemate argument loses much of its force when there's an ongoing drug dealing activity. So you're saying there was, the defendant was engaged in a continuing course of conduct. Is that correct? Yes, Your Honor. Well, was Smith a reliable witness? Yes, Your Honor. And why was she? I mean, she's got an October 2016 arrest. Doesn't that have some effect on her credibility? Your Honors, it could. And at this point, it might be worth pointing out that when the motion to suppress was argued, the parties agreed to operate within the four corners. But because the motion was filed and it was filed as a joint motion, one to suppress and then one emotion for a Frank's hearing. So to be quite frank, it did get muddled and some of this extraneous information was admitted to the extent that the state responded to it below. Look, I think the state admitted within the warrant affidavit that both of the informants were involved in drug using. It's probably not that atypical for a drug investigation to rely on drug users as people that maybe drug dealers would trust. But informant Smith, outside of what she detailed to the officers about being able to procure drugs, they actually she reached out to defendant through the police to purchase drugs and defendant. I believe the end of the conversation was, what do you need? And so this certainly was not in the denial of his ability to provide drugs to informant Smith. Okay. Counsel, what role does a defendant's parolee status have on a probable cause determination when a warrant is being sought? I mean, the defendant says here this was a red herring because this really wasn't a parolee search. How do you respond to that? Well, in a couple of ways, Your Honor, first, the fact that the officer that sought the preliminary hearing that he wasn't relying solely on defendants parolee status, it doesn't really affect the analysis at all because the Fourth Amendment is always, always relies on the objective nature of the search warrant affidavit. I mean, the officer laid out that he was a parolee within the affidavit, so the issuing judge could rely on that fact in determining probable cause. Now, what substantive effect does his parolee status have? One is the United States Supreme Court has recognized that parolees are more likely to commit crimes, and so that by itself elevates the probable cause analysis. But the flip side to that is parolees have a severely diminished expectation of privacy, and the ultimate touchstone to the Fourth Amendment, when you look at when a search is conducted, is reasonableness. And when an individual has such a diminished expectation of privacy, searches, quite frankly, are more likely to be reasonable. And I pointed out the Ninth Circuit case where it was a warrantless attachment of a GPS that occurred after Jones, and the Ninth Circuit said, look, we recognize Jones, but we are to parolees, and noting their diminished expectation of privacy. So I think for all those reasons, the defendant's parolee status is relevant, despite the officer's testimony that he was not relying on the parolee status for the stop. All right. And then did you not make a motion to cite additional authority, the Johnson case out of the First District? Yes, Your Honor. And why is that case important? Well, the case, it really follows along Wilson, but it came out after the briefing. So just to say that courts are still recognizing that defendants have such a diminished expectation of privacy that they essentially have no right to object to searches of their residents, their vehicles, effects, and it's essentially just to emphasize that point, Your Honor. All right. And then finally, my last question is, didn't you really forfeit your claim that even if this warrant was improperly issued, the evidence was admissible under this good faith exception to the exclusionary rule? Your Honor, the state admits that good faith was not argued in the trial court, so it could be considered forfeited, but if I may, I think there are a few reasons why this court should still consider the good faith argument. One is... Tell us why. Oh, sorry, Your Honor. Tell us why, please. Okay. Well, first is substantively, there's no misconduct to meaningfully deter in this case. As I discussed in my opening, the officers conducted a lengthy investigation, they presented their findings to the magistrate, and the independent judge granted the request for the warrant. So the officers in this case did exactly what we want, which is to go seek a warrant and an independent determination. The other thing is, there's really no further factual development needed. You know, sometimes when a claim is forfeited, we don't know what may have been developed in the trial court. But here we're saying, could an officer objectively have relied on the issuing judge's independent determination? Or on the flip side, was this affidavit such a bare bones affidavit that the executing officers could not have relied in good faith? And those are legal determinations. They don't depend on any factual development that may have occurred. And then finally, there's really a lack of authority in this area for officers. And so developing the good faith basis would bring some uniformity to the law. And kind of, you know, without punishing the officers in this case, set a guidepost for the future. So for those reasons, I think this court should consider the state's good faith argument. Okay. Thank you. Justice Shasta, do you have questions? Yes, Justice Enoff, you pretty much covered most of my questions, but I have one, Mr. Rogers. Was it a problem that the confidential informant never appeared before the judge in getting the search warrant? I don't think it was a problem, Your Honor. I mean, it's certainly something that could be considered. I know there's case law out there that really elevates the judge's credibility determination if an informant does appear. But I don't think that that's, you know, completely undermines the state's case because the state presented a really significant amount of evidence about what the informants provided the officers, their historical performance. And then with that, the state provided reasons for the court not to believe the informants, which was their drug use convictions and, you know, any credibility issues that may come along with that. So I don't think the fact that they didn't, the informants didn't appear undermines the state's case. No, Your Honor. That's all I have. Thank you very much. Justice Hudson. Thank you. Good morning, Mr. Rogers. Good morning, Your Honor. Mr. Rogers, in response to a question by Justice Zinoff on the failure of the state to raise the good faith argument in the trial court, you responded by the argument that there was no misconduct on the part of the police. They acted in good faith. To ask a pointed question, what does the good faith argument have to do with the failure of the state to raise that argument in the trial court? Are you saying that the good faith excuses or trumps the requirement that the state raise the argument in the trial court? No, Your Honor. I mean, certainly this, the issue could be considered forfeited. I was just providing reasons why this court should reach the issue, but not saying that it trumps the fact that it was not raised in the trial court. All right. Mr. Rogers, are you aware of any cases that have enunciated a hard and fast rule as to when a warrant information becomes stale? No, Your Honor. In reviewing the affidavits and the facts, I think we noted that Davis' information concerning the defendant was uncooperated by the police and Davis provided no firsthand knowledge about the defendant.  That is correct, Your Honor. All right. There was somewhere in the information I recall that there was a tip provided by Davis concerning defendant's acts of delivering drugs to Medina on Fridays. Do you recall that? Yes, Your Honor. The police could have easily corroborated that tip by verifying the defendant's presence at Medina's home. Could they not have done that? They potentially could have, Your Honor, and I'll just note that earlier on in the application they did say that in these types of operations, covert surveillance is very difficult, and so it may have been a situation where tailing defendant to that location would have undermined the investigation. All right. So as I understand, your overarching response to the issue of whether or not the information in the warrant was stale is that because there was evidence provided or circumstances that were enterprised, so to speak, by the defendant, that that would basically legally sufficiently address the issue of the staleness. Is that essentially what you're saying? Essentially, Your Honor, and then add in defendant's background, which kind of goes into the ongoing nature that defendant does not have a casual relationship to drug dealing. This is more of a lifestyle, and along with Smith and then Davis months later, defendant continued connection to drug distribution. Yes, Your Honor. All right. Thank you, Mr. Rogers. That's all I have. Thank you. All right. Ms. Daniel. Good morning, Your Honors. May it please the court. My name is Catherine O'Daniel, and I am here to argue for Mr. Randall, the defendant. I'm going to start, I guess, by responding to some points that were just brought up. With respect to staleness, there is no information in that affidavit with respect to an ongoing course of conduct as to Mr. Randall. Every bit of information in that affidavit related to things, and I quote, in the past, and those were Detective Henry's words, in the past, and those were words used by, if you believe Detective Henry, used by Davis and Smith. These things happened in the past. There is not one shred of evidence in that affidavit to suggest that Willie Randall was involved in an ongoing scheme of criminal conduct. Now, a good case can be made with respect to Vaughn and Medina, however, nothing with respect to Mr. Randall, and it's not a small point, because it was a 10-month investigation, and not once was Mr. Randall's vehicle seen or Mr. Randall himself seen in the presence of Medina or Vaughn, and I think that's something that should definitely be considered by the court. With respect to staleness, the court ruled two things. The uncorroborated information provided by the confidential informants was so remote in time that it could not form the basis for probable cause finding to support the granting of the search warrant. So, I guess there's two things I want to hit there. Number one, uncorroborated information, and number two, information that was stale. It's our position that the trial court was reasonable, her ruling was reasonable, and it was consistent with the evidence, and she correctly applied the facts to the law. I think the state and I have a differing viewpoint on what the correct standard of review is. I set mine out in our brief, and we believe it's a bifurcated standard of review. It's not simply a determination whether the issuing magistrate had a substantial basis for the issuing the search warrant. It's our respectful position that the trial court should only be reversed if the findings of fact were against the manifest way to the evidence, and this court can look and review de novo the court's overall decision with respect to the suppression of the evidence. I'd like to address now the staleness. We have two informants, Smith and Davis. Smith gave information on two days during a three-week period in 2016, and the information was 11 months old by the time Detective Henry applied for the warrant. The officers, and this is another point that I believe I submit is not a small point, the officers did nothing with Smith's information for a full five months. No investigation was ever opened until November of 2016. Smith's information, once it came to light that through independent investigation that had been arrested on a class X methamphetamine charge after she had given this information, and this information, I'm sorry, before she had given this information, and the information was not made known to the issuing magistrate, the state then said that Smith's information was less important. She was a lesser informant than Davis, and the court knows Smith claimed 30 to 40 purchases over 18 months, but she never gave the date of her last purchase. But we know from looking at the time frame in the warrant that it had to have been sometime between October of 2014 and April of 2016, which again brings us to 11 months before the complaint was presented to the magistrate. Smith's last contact with the defendant was on May the 16th of 2016 when she was unable to arrange a drug transaction. I received in discovery just a couple snippets of whatever that conversation was. The entire conversation was never produced, but it's notable that the conversation trails off with, what are you trying to do? And Smith tries to arrange a drug transaction, and Mr. Randall's response is, do I have to? There was no zeal on Mr. Randall's part to engage in any kind of transaction with Smith, and it's very important that Smith says in that exchange, hey, it's been a while. So, I mean, that's just another paraphrase for stale information. Smith was unable to identify my client's vehicle. She was two vehicles outdated. She didn't know his address. She said it had been a while, and all of her information, and again, this is in quotes,  She'd given a ride to the defendant. That was totally uncorroborated, and in the past, as the trial court pointed out, could it be months, years? I mean, you know, it's impossible to conduct a meaningful analysis in terms of staleness when we don't know, have any information whatsoever with respect to when in the past might be. Moving to Davis, who the state labeled their stronger informant. Davis provided information on November the 1st of 2016, four and a half months before the state sought, I mean, I'm sorry, before Detective Henry sought a search warrant. Davis brings to the table zero personal knowledge. He never had a conversation with the defendant. He never made a purchase with the defendant. He never saw the defendant commit any crime. He never saw Mr. Randall in possession of any drugs. He's simply told of a conversation he heard other people having in the past. It was related to a time frame in the past. Medina wanted people to have their money in because Randall would drop off drugs, something like that. It's undated and unsourced information as to how Davis knew when the defendant would that he dropped them off to Medina. But I think it's a huge point that 127 days passed from the time that Davis gave this information to the detectives and the time the warrant was secured. That encompasses 18 Friday nights. They knew if Davis is credible, they knew Mr. Randall would be dropping the drugs off to Medina on Friday. They knew where Medina lived. They knew defendant's car. Yet no effort whatsoever was made to corroborate that information. And again, part of the trial court suppression order was based on the fact the informant information was not only stale, it was uncorroborated by police. Davis said defendant drives drugs from an unknown location, possibly Chicago. And the case law is pretty replete with, you know, it stands for rumor doesn't establish probable cause. Probable cause cannot be established by the word on the street or rumor. And with respect to continuing course of conduct, and if the staleness is a problem, then the state can cure it. If there's evidence of a continuing course of conduct, there's no evidence except for things that occurred in the past with respect to the defendant. And Evara versus Illinois tells us that probable cause doesn't jump from person to person. Probable cause has to be independently established as to each person. And in this case, during the entire investigation, not a single witness saw the defendant commit any crime and never saw him in possession of drugs and never saw him even with these other people who were the targets of the investigation. It's our position also that the confidential information itself did not establish probable cause. And there's a variety of factors from Gates and Tisler, including veracity, basis of knowledge, reliability, reputation, independent corroboration. And I will quickly hit a few of them. With respect to Smith and Davis and their reputation, neither of them appeared in court. Neither was sworn under oath to the truth of the information in the affidavit. Neither of them signed the affidavit. Neither was ever observed by the magistrate. So none of the traditional safeguards to make sure the information that allows such an intrusion in someone's privacy, even a parolee, none of those safeguards were taken. Here we have two convicted felons, drug users. And in fact, Smith is an addict. And Davis has multiple crimes of dishonesty. In neither case was there ever a showing of prior reliability by either of these informants. Their basis of knowledge I went through very thoroughly in the brief. And I would argue there's no nexus to the Dodge Ram. No one ever saw him driving that particular car. And just as a commentary on what the state said about the defendant's cars, it appears he was downgrading, which was showing a lesser financial situation. However, it can't be unrecognized that Davis had no personal knowledge whatsoever and that there was no corroboration by the police, as the court itself pointed out. Another thing before I get run out of time, Detective Henry had no independent information. Defendant planned to acquire drugs that day. He had only a hunch. And that was in his preliminary hearing testimony under oath. And with respect to the parolee argument, it is a red herring. And it's a red herring because in this case, the state decided to get a tracking warrant. They decided to get a tracking warrant because they had to go that way if they wanted to track the defendant's car. The Supreme Court under Jones now requires a tracking warrant. There's no exception if the person is a parolee. The difference between a regular parolee search and what the state did here is how they went about the search. They chose this route and they can't now rewrite history to say that this was a parolee search when we have under oath testimony, three different places from Detective Henry, the lead case agent, this was not a parolee search. And in fact, Randall's parole status had absolutely nothing to do. It was no part of the investigation whatsoever. So for that reason, it is a red herring. But to address it anyway, the search in this case depended on that tracking warrant. They were not pulling that car over to do a parolee search. Pulling that car over to get inside that car to search for drugs based only on a hunch. And but for that tracker, they would not have been in a position assembled along I-88 waiting for Mr. Randall. Jones adds protections regardless of what your status is. And Illinois has codified Jones in the Freedom from Location Surveillance Act. And that absolutely requires a search warrant, which is the search warrant that was gotten or that was obtained in this case. And the search warrant has to be supported by probable cause. All of the cases cited by the state are different and can be distinguished. Those are parolee spot checks. Those are individual isolated and including the Johnson case that the court has given them to cite. That's a first district case. It's not binding. But more importantly, it was a parolee search at the person's home. That is not what we have here. And the Johnson case did not implicate United States versus Jones because there's no GPS tracker involved in the Johnson case. There was no warrant required for the type of parolee search that was undertaken in Johnson. In this case, the state conceded that it needed the warrant to affix the tracking device to Mr. Randall's car. But it also says, well, it's not really relevant because I think their point they made in their reply brief was that they don't even believe they needed the warrant to track Mr. Randall's car because of his parolee status. That's not what the U.S. Supreme Court case law says. And there's also a ton of Illinois case law. Most specifically, People v. LaFleur. And People v. LaFleur recognizes the principles from Wilson that parolees have a diminished expectation of privacy. But just because it's diminished, it doesn't mean they have. They're not prisoners. It's not that they don't have any expectation of privacy. Oh, I'm sorry. Counsel, I think you're out of time. I know it's hard for all of us to hear the timer. But if you want to just wrap up, please. I apologize for that. And I will wrap up. Unlike the defendant in Wilson, whose bedroom was subject to a one-time warrantless search while he was on parole, the defendant was subject to continuous, surreptitious, and potentially indefinite GPS monitoring. That's a quote that comes from Jones and also comes from LaFleur. And I just, if they had wanted to. Counsel, I'm afraid you are out of time. And we've got to stick with our time frame today to allow questions and to complete this oral argument within the time frame. So thank you very much for your argument. I do have some questions for you. You seem to insist that our standard of review is the bifurcated standard of review that applies to motions to suppress and that we are reviewing the trial court's decision. But how do you get by the second district case, People v. Brown, where this court stated, and I'm quoting, where the only issue is whether the complaint and supporting affidavit established probable cause. Our analysis is of the issuing judge's initial determination of probable cause, not the trial court's assessment thereof on a motion to quash and suppress. Well, I would suggest to the court that under either standard this warrant doesn't pass either test. I believe I set forth in my, and I'm going through the brief now. I set forth a different district. What case supports your position that the standard of review is the bifurcated standard? A number of cases. I would point the court to People v. Pitts. Okay, let me move on. You focus on Smith and Davis and the lack of reliability, the fact that their basis of knowledge was shaky, but these were not anonymous informants, were they? They were not anonymous informants, Your Honor, but nor were they brought before the court, nor were they ever sworn to the veracity of the information. They don't have to appear before the magistrate. However, that's not a requirement, is it? It is not a requirement. However, it certainly adds to probable cause and certainly bolsters their information when they are sworn to it and when they appear before a magistrate. But we do have to look at the totality of circumstances, do we not? And in doing that, the state referred to other factors that are taken into account if we look at the totality of circumstances, such as the fact that defendant was a documented gang member, that Davis did provide information about the gang's drug operations and the defendant's role in it. They, the state also talked about the defendant's prior record. That's some of the information that the state indicated should be, in addition to the parolee status, which we've talked about, should be taken into account. Isn't that sufficient here? All these other factors, but they look at the totality of circumstances. Absolutely, the court looks at the totality of circumstances. That's correct. However, when you look at the totality of circumstances with respect to Mr. Randall in isolation, whose freedom is on the line here, all of the information relating to Mr. Randall is information from the past. It does not establish an ongoing course of criminal activity. And they had 10 months to corroborate any of this information, and it was wholly uncorroborated. I don't think it's proper to simply say, this person has a background. Okay, boom, that's probable cause because, you know, once a criminal, always a criminal. It doesn't work like that. All of the information related in the past. Counsel, I have one other question, then I'll turn it over to Justice Shostak. On the fifth page of the affidavit, while there is some language at the bottom of that paragraph that starts on November 1, 2016, Davis overheard Medina tell others in the past. But there's also a sentence that says, Davis said that Randall transports, that's present tense, the drugs from an unknown location. And it goes on to say, this transfer typically occurs, that's present tense. So there is language in this affidavit that is present tense language. And so we need to take that into account. Also, do we not? Well, I would argue there'd be a stronger, stronger reason for a court to take that into account. If there were any source of his information attached to that, where did he learn it? When did he learn it? Thanks, Counsel. Justice Shostak? Yes, one question. Counsel, do you have a case that sets out a bright line as to how long before a warrant is stale? Your Honor, no. I have cases that say the opposite. There is no bright line. And it's a case-by-case consideration. Okay. And why is it a problem that the confidential informants never appear before the judge in getting that search warrant? The police officer had all the information, did he not? Well, if the informant, if Smith had been in the courtroom, for instance, maybe when the officer talked about her background, she might have piped up and said, oh, by the way, I have a pending Class X felony. It's important. I think it adds to their reliability. It adds to their credibility. And there's no substitute for a magistrate being able to observe confidential informants in a courtroom. And it's a factor that's in case law. It talks about, you know, what, do they have to be there? They don't have to be there. But it certainly heightens the process and the reliability. So it's just one factor? It's one factor, correct. The same, the search warrant, it's not proof beyond a reasonable doubt that has to be proven. It's just that they just have, the judge just has to determine that there is a fair probability that contraband or evidence of a crime will be found in the particular place, correct? Correct. That's correct. That's the law. So the burden on the state is not so stringent? Well, I would argue it is. It is stringent. They do have to show that the evidence will be found currently. That's part of the inquiry. And there was nothing current here. It was stale. And they also have to show a nexus. It has to be, probable cause has to be particularized to a place. And here, there was no probable cause whatsoever with respect to that Dodge Ram. And the state argued, well, probable cause hops from car to car to car, even if we don't know what car a person is driving. That's just not how it works. Right. One other question. The good faith exception. You argued in your brief that the state had waived that. And today they come in and they say, well, even if we waived it, you know, you can look at it for other reasons. Do you believe that? I do not. The rules apply to the state as well as to the defense. It's not fair to raise something for the first time on appeal when, you know, the defendant hasn't been, and the trial court hasn't been allowed to respond to it. And we also, it was argued below, this is not a closed case. And I believe, and if I'm wrong, I apologize. I believe the trial court found it was not a, it was not a closed case. And the state further said, you know, it shouldn't apply because there's no misconduct here. Well, the issuing magistrate wasn't told everything. And there was absolutely no corroboration of the information that these CIs provided. And the information happened to be wholly stale, which was what the trial court found. And the search warrant here had misrepresentations. Not only did it not disclose Smith's pending Class X methamphetamine charge, nor did it disclose the true nature of her relationship with Mr. Randall. And it did not, and it misrepresented to the court that she had recorded Mr. Randall in compromising conversations. That is not true at all. And when I saw a discovery of that, I was told, oh, no, there are no such recordings. So... Thank you for answering my questions. I have no further questions. Thank you, Your Honor. Justice Hudson? Yes, I have a couple of questions. Mr. O'Daniel, would you acknowledge that the informants, Smith and Davis, did have firsthand knowledge of the local Satan Disciples Street Gang and their operations? Judge, I don't think I have enough information to acknowledge that. It seems that... You're not arguing that they don't, on the other hand, are you? I'm not. I mean, the search warrant, if you take the search warrant at face value, and I'm not sure you can in this particular case, they provided information about Satan Disciples. However, there's no information to suggest Mr. Randall was still a member of, or still affiliated with, or still in ongoing contact with any of these people that were the targets. And this was an extensive investigation, not only of Mr. Randall, but of those other people. And in 10 months, my client is never once seen in the presence of any of them. I think that is a very important fact. And with regard to the staleness issue, would you agree that if we were to find that the evidence, so the information provided by Henry, was sufficient to cause a reasonable person to believe that the defendant was engaged in ongoing, continuing criminal activity, that would overrule the staleness issue, would it not? If you were to find, I want to make sure I understand the question. If you found that Detective Henry had sufficient information, that wipes out the staleness issue? No, that he had sufficient information to believe that the defendant was engaged in ongoing, continuing criminal activity, that would obviate the staleness issue. I understand. I understand. Well, it would temper it. The law says if there's a staleness problem, it can be rehabilitated and may be propped up if there's evidence of ongoing criminal activity. I don't think it ends the inquiry. I think it's just another one of the totality of circumstances that the court must consider. To cure the staleness issue, could it not? That it cures? No, I don't believe it cures the staleness issue. So if somebody's engaged in an ongoing criminal activity up until the day that the warrant is obtained, for example, that would not trump the staleness issue. That's your argument? Um, I would argue that it would temper it. And with respect to this case, there is no evidence whatsoever in that warrant with respect to ongoing criminal activity. It was all in the past, which is a phrase that was quoted all throughout that warrant. My phrase, my question is, if we were to find, do you have any cases that say that if there was an ongoing criminal activity up until the date that the warrant was obtained, that that would only temper the staleness argument? Do you have any cases that say that? I don't think I, I don't think I do. I can't think of any off the top of my head. Okay, I have a final question. I think either Justice Shostak or Justice Zinoff may have raised this. And you actually said that the fact that Davis didn't know the location of the drugs or who he got that from was a credibility problem, correct? Yes. Davis did, however, make the comment  from an unknown location and that the transfer typically occurs on Fridays. Can't that be read to be referring to an ongoing drug activity? Well, perhaps if there were more background about how he knew it, when he learned it, what his source was. I don't think there's enough to make that leap here. All right, thank you very much. Thank you, Your Honors. All right, thank you. Mr. Rogers, your rebuttal. Thank you, Your Honor. I'll start by briefly making an analogy. In a case like this, I think it's good to look at it like a 100-piece puzzle. And maybe you're a fan of National Geographic and you like tigers, and you have a 100-piece puzzle that makes a tiger. But if you take all those 100 pieces and scatter them out, it would clearly not look like a tiger. And I think that's what Defense Counsel Blow was successfully able to get the trial court to do is to isolate the timeline and convince the court that there was no probable cause. And I would refer this court to the trial court's decision at the common law record, page 163. The court states, defendant has argued several reasons why the issuing court lacked probable cause. But this court finds it only necessary to address one of the arguments. The most persuasive argument set forth by defendant is that the information used in the complaint for search warrant was stale. And the state would urge this court not to go down the same path and to isolate any given fact and elevate that to determine that there's not probable cause. There was a lot going on in this case. Defendant's background is very important. He's a parolee. Courts have determined that the state has a very substantial interest in monitoring parolees to prevent recidivism. On the ongoing nature of the information and of defendant's drug distribution activities, the only reasonable way to read that November 1st, 2016 conversation is that Medina's telling Davis that defendant is continually making these transfers on Fridays. And that's why he needs the money from all of his lower level dealers by then. Davis also seemed to have pretty inside knowledge of the Satan disciples. I mean, he's conducting transactions with Louis Vaughn. And at the end of one of the transactions, Vaughn tells Davis, I'm fitting the slide on Pops. And Pops is a reference to Medina. Now, Vaughn's not gonna use that slang language with just a customer. He's gonna use that language with someone who's intimate with and familiar with the nicknames. Defendant also brought up the delay. The defendant did not obtain this truck until February 24th, 2017. The officers could not have obtained a warrant to track this 2015 Dodge Ram until defendant obtains it. So the fact that there's this few month delay is understandable, given the defendant is swapping vehicles on such a regular basis. And then finally, defendant towards the end of the argument started attacking the truthfulness of this complaint. And again, when this motion to suppress hearing started, the parties agreed to separate out the suppression issue and the Frank's issue. And so that the decision under review was solely to be based on the four corners of the search warrant affidavit. And I would urge this court to similarly look at what is contained within the affidavit. And if defendant on remand wants to renew the Frank's challenge or request for a Frank's hearing, then defense should be free to do so, but it should not be able to selectively attack different parts of the evidence on appeal. And with that, the state again asked this court to reverse the trial court's decision. And if the court has any further questions, I'm certainly open to answering those. This is Justice Zenos. I do not have any questions of you, Mr. Rogers. Justice Shostak? Yeah, just briefly, are you saying then that the authorities have carte blanche when it comes to a parolee? Anytime, anywhere, they can just search, issue a warrant, et cetera. I don't know about carte blanche, Your Honor, but in a lot of the cases, they do have carte blanche to search the individual's residence vehicle effects. Now, in this case, it's a little unique because we do have the statute now, which carves out exceptions. So while it's not carte blanche, I think the parolee status and the severely diminished expectation of privacy factors into the analysis. Okay, thank you. Thank you, Your Honor. Justice Hudson? Yes, I do have a question. Mr. Rogers, I think a fair reading of the affidavit and the information is that Davis and Smith were familiar with the Satan Disciples operation and the street gang, things of that nature. However, Ms. O'Daniel has honed in on the issue that Davis's information concerning the defendant was uncorroborated by the police and that Davis provided no personal firsthand knowledge about the defendant's ongoing drug operation. How do you respond to that argument? Mainly, Your Honor, in that to say Davis's statements were uncorroborated, I don't think is 100% accurate because Smith actually described a ride she took with defendant to procure a large amount of cocaine near Chicago. And so whatever we have, seven, eight months apart, we have one person actually accompanying defendant to Chicago to procure drugs. And then we have someone else saying, hey, defendant's role in this is to travel potentially near Chicago in return with large amounts of drugs for the Satan Disciples to sell. So while Davis himself didn't have firsthand knowledge, Smith certainly did. And the two corroborate each other. All right, thank you, Mr. Rogers. Thank you, Your Honor. All right, thank you very much, counsel for your arguments this morning. The court will take the matter under advisement, will render a decision in due course. And at this time, this argument is concluded. Thank you.